## IN THE CIRCUIT COURT OF MARSHALL COUNTY, MISSISSIPPI

MARVIN BURT,

PLAINTIFF,

VS

CAUSE NO. *CV2022-069*

NAVISTAR, INC.; SUMMIT TRUCK
GROUP OF MISSISSIPPI LLC;
WATERS TRUCK & TRACTOR
CO., INC; ET AL.
DEFENDANT,

THE STATE OF MISSISSIPPI

TO:

Navistar, Inc.
c/o Corporation Service Company
7716 Old Canton Road, Suite C
Madison, MS 39110

Received by: *Randy Brewe*
Deputy Sheriff

APR 2 6 2022

Madison County Sheriff's Department
Randall Tucker, Sheriff

### NOTICE TO DEFENDANT(S)

The complaint which is attached to this summons is important and you must take immediate action to protect your rights.

You are required to mail or hand-deliver a copy of a written response to the Complaint to a J. Curt Tanner, the attorney for the Plaintiff, whose address is 2131 Magnolia Avenue South, Ste 200, Birmingham, Alabama, 35205. Your response must be mailed or delivered within (30) days from the date of delivery of this summons and complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint.

You must also file the original of your response with the clerk of this Court within a reasonable time afterward.

ISSUED UNDER MY HAND AND THE SEAL OF SAID COURT, this the *9th*

day of *March*, 2022.

*Monet Autry*
COURT CLERK

*Latrina [illegible]*, D.C.

EXHIBIT
B

## IN THE CIRCUIT COURT OF MARSHALL COUNTY, MISSISSIPPI

MARVIN BURT, )
)
      **Plaintiff,** ) CIVIL ACTION
)
v. ) CASE NO.: _CV2022-069_
)
NAVISTAR, INC.; SUMMIT TRUCK )
GROUP OF MISSISSIPPI LLC; )
WATERS TRUCK & TRACTOR CO., )
INC.; and FICTITIOUS PARTIES )
NOS. 1-10, the person(s) or entity(ies) that )
undertook, by way of contract or otherwise, )
to modify, repair, maintain or inspect )
Plaintiff's vehicle; NOS. 11-20, the )
person(s) or entity(ies) that undertook, )
by way of contract or otherwise, )
the engineering, design, manufacturing, )
assembly, testing, inspection, validation, )
sale, or distribution of Plaintiff's vehicle, )
including any aspect or component part of )
the vehicle that contributed to the event )
made the basis of this lawsuit; NOS. 21-30, )
the person(s) or entity(ies) that undertook, )
caused, allowed or approved the )
modification, repair, maintenance or )
inspection of Plaintiff's vehicle, including )
all components that contributed to the event )
made the basis of this lawsuit; NOS. 31-40, )
the person(s) or entity(ies) that undertook, )
by way of contract or otherwise, to inspect )
Plaintiff's vehicle for any and all safety )
hazards; NOS. 41-50, the person(s) or )
entity(ies) that undertook, by way of )
contract or otherwise, to inspect Plaintiff's )
vehicle for any and all defects, irregularities, )
inconsistencies, aberrations or changes; )
NOS. 51-60, the person(s) or entity(ies) )
that designed, manufactured, distributed, )
sold or placed in the stream of commerce )
any tools, diagnostic devices, and/or )
software used to modify, repair, maintain )
or inspect the Plaintiff's vehicle or any )
component part thereof; NOS. 61-70, the )
person(s) or entity(ies) that are the successor )

1

FILED

MAR 09 2022

MONET AUTRY
CIRCUIT CLERK, MARSHALL CO., MS
BY _____ D.C.

in interest of any person or entity described )
above or the predecessor entity of any )
person or entity described above; )
)
     **Defendants.** )

## COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

Plaintiff MARVIN BURT, by and through the undersigned counsel, sets forth his claims against Defendants NAVISTAR, INC.; SUMMIT TRUCK GROUP OF MISSISSIPPI LLC; WATERS TRUCK & TRACTOR CO., INC.; and FICTITIOUS DEFENDANTS NOS. 1-70 in this Complaint for Damages and Jury Trial Demand as follows:

### I. NATURE OF THE CASE

1.     This is product liability action to remedy the life-altering personal injuries and damages caused to Plaintiff by the latent safety defects present in his 2012 International ProStar+ LF867 Class 8 Truck equipped with a "MaxxForce" diesel engine, with VIN "3HSDJSJR2CN\*\*\*\*\*\*" ("SUBJECT VEHICLE").

2.     The SUBJECT VEHICLE was originally delivered by Defendant NAVISTAR with a defective "Exhaust Gas Recirculation" (or "EGR") emissions technology that failed to perform as designed ("the EGR defect"). Defendant NAVISTAR designed, manufactured, supplied, and serviced this same defective technology in more than 60,000 2011-2014 model year vehicles equipped with a MaxxForce 11- or 13-liter engine ("Defective Vehicles"). The defective EGR system equipped with Defective Vehicles created numerous quality and safety issues, including repeated instances of check engine lights illuminating, engines shutting down or losing power, EGR cooler and valve failures, turbocharger failures, diesel particulate filters clogging, and other issues that led to excessive downtime and prevented NAVISTAR's MaxxForce trucks from functioning as warranted and represented.

2

3.      Here, the defectively designed EGR system equipped in the SUBJECT VEHICLE caused repeated overheating of the SUBJECT VEHICLE's drivetrain, causing the SUBJECT VEHICLE to erupt into flame and permanently injure Plaintiff as alleged herein.

4.      Plaintiff was injured by these latent defects that were known to Defendants for years prior to the incident at issue. Plaintiff seeks all compensatory damages including economic damages and compensation for his pain, suffering, and mental anguish (both past and future); punitive damages; and any other legal or equitable relief available in the alternative.

## II. PARTIES, VENUE, & JURISDICTION

5.      Plaintiff MARVIN BURT is an adult citizen of the State of Mississippi. By filing this action, Plaintiff avails himself of the jurisdiction and venue of this Court.

6.      Defendant NAVISTAR, INC. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 2701 Navistar Drive, Lisle, IL 60532. Defendant NAVISTAR manufactured, distributed, sold, serviced and/or warranted the Defective Vehicles, including the SUBJECT VEHICLE. NAVISTAR distributed, sold, serviced and/or warranted, directly or indirectly, tens of thousands of Defective Vehicles with the understanding and expectation that those vehicles would be sold in, operate in, and be fit for their intended purpose in Mississippi. NAVISTAR may be served with legal process through its agent for service of process: Corporation Service Company, 7716 Old Canton Rd, Suite C, Madison, MS 39110.

7.      Defendant SUMMIT TRUCK GROUP OF MISSISSIPPI LLC is a domestic partnership registered to do business in Mississippi. This Defendant may be served with legal process through its agent for service of process: Corporation Service Company, 7716 Old Canton Rd, Suite C, Madison, MS 39110.

3

8.    Defendant WATERS TRUCK & TRACTOR CO., INC. is a domestic corporation organized and existing under the laws of the State of Mississippi, having a principal place of business located at 96 East Plymouth Road, Columbus, MS 39705. This Defendant may be served with legal process through its agent for service of process: Raymond Michael Waters III, Hwy 82 W Bypass/Plymouth Road, Columbus, MS 39705.

9.    Upon information and belief, Defendant WATERS is the successor-in-interest of Defendant SUMMIT and obtained the liabilities of Defendant SUMMIT with respect to SUMMIT's acts and omissions as described herein. Therefore, all allegations against SUMMIT are therefore allegations against its successor-in-interest, Defendant WATERS. These Defendants are therefore described collectively herein as "Defendant SUMMIT/WATERS."

10.    This Court has jurisdiction over the foreign Defendant NAVISTAR because NAVISTAR does substantial business in the State of Mississippi, is registered to and in fact is doing business within the State of Mississippi, and otherwise maintains requisite minimum contacts with the State of Mississippi. Additionally, Defendant NAVISTAR distributes in this State, receives substantial compensation and profits from sales, maintenance, and service of vehicles in Mississippi, including the Defective Vehicles and the SUBJECT VEHICLE in particular. NAVISTAR accomplishes this business in Mississippi in part through its certified dealership and service center networks, including specifically Defendant SUMMIT/WATERS, a certified Navistar repair facility and dealership that explicitly contracted with NAVISTAR to further NAVISTAR's work on the SUBJECT VEHICLE (and in fact did so). Through its own actions and the actions of its dealerships, service centers, and other agents (including Defendant SUMMIT/WATERS), NAVISTAR did avail itself of the jurisdiction of this State, and in fact performed service work on the SUBJECT VEHICLE, including warranty work and work relevant

4

to the incident that is the basis of this lawsuit. Further, NAVISTAR explicitly became aware of the dangerous latent condition present in the SUBJECT VEHICLE and other Defective Vehicles through these Mississippi contacts, including through its relationship with Defendant SUMMIT/WATERS, and yet Defendant NAVISTAR failed to recall, remedy, warn, or otherwise fulfill its duties under the laws of Mississippi when it learned of the dangerous latent condition in the SUBJECT VEHICLE, causing Plaintiff's injuries alleged herein.

11. There is no federal jurisdiction over this matter because this is a case or controversy between two citizens of the State of Mississippi, Plaintiff MARVIN BURT and Defendant WATERS TRUCK & TRACTOR, CO., INC.

12. FICTITIOUS DEFENDANTS Nos. 1-70 are each identified and described in the style of this action. Plaintiff is ignorant of the true names and capacities of the FICTITIOUS DEFENDANTS, and therefore sues such Defendants by fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities when they have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants were responsible in some manner for the occurrences herein alleged, and that Plaintiff's losses, as herein alleged, were proximately caused by Defendants' conduct.

13. Venue is properly placed in this judicial district pursuant to Miss. Code § 11-11-3(1)(a)(i) because the substantial event that caused Plaintiff's injury occurred in Marshall County, Mississippi.

### III. FACTUAL ALLEGATIONS

14. Soon after purchasing the SUBJECT VEHICLE, Plaintiff Marvin Burt began experiencing numerous repeated issues with the vehicle as a result of the EGR defect, including

electronic warnings, engine underperformance, breaking down, overheating, the vehicle going into "limp mode," and excessive black smoke from the vehicle's exhaust.

15.     When Plaintiff first began experiencing the symptoms of the EGR defect and first sought repair of the SUBJECT VEHICLE, it was still covered by NAVISTAR's original factory warranty.

16.     Both during and after the warranty period, Plaintiff took the SUBJECT VEHICLE for service to numerous NAVISTAR repair facilities on numerous occasions, both within Mississippi and elsewhere.

17.     Plaintiff sought repair of the EGR defect numerous times with Defendant SUMMIT/WATERS at its service location in Tupelo, MS. Plaintiff continued to pay thousands of dollars to have his vehicle repaired multiple times, but the EGR defect in the SUBJECT VEHICLE persisted despite Plaintiff's efforts. Plaintiff spent thousands of dollars at WATERS on numerous occasions attempting to have the EGR defect repaired.

18.     Approximately one month prior to the incident, Plaintiff again brought the SUBJECT VEHICLE to Defendant SUMMIT/WATERS for repair of the EGR defect. On that occasion, Plaintiff again paid for service of the SUBJECT VEHICLE's EGR defect and was told his vehicle was repaired. Defendant SUMMIT/WATERS, through its agents and representatives, falsely represented to Plaintiff that his vehicle was repaired and safe to drive and support Plaintiff's livelihood as an independent truck driver.

19.     In March of 2019 Plaintiff was driving the SUBJECT VEHICLE on his way home from a trip to Florida. The SUBJECT VEHICLE again began to exhibit symptoms of the EGR defect: the vehicle went into "limp mode," limiting engine performance, speed limiting the SUBJECT VEHICLE to 45 mph, and creating billows of black smoke from the exhaust. Plaintiff

6

parked the SUBJECT VEHICLE at his home until he could drive it back to Defendant SUMMIT/WATERS for a follow-up on his prior service appointment.

20.     On March 11, 2019, Plaintiff began driving the SUBJECT VEHICLE back to Defendant SUMMIT/WATERS in Tupelo, MS in yet another attempt to remedy the EGR defect. As Plaintiff was driving through Marshall County, Mississippi, the SUBJECT VEHICLE again exhibited symptoms of the defect, went into "limp mode," and signaled for Plaintiff to pull over and manually begin the "diesel particulate filter regeneration" process to restart the truck after manifestation of the EGR defect.

21.     As instructed by NAVISTAR and SUMMIT/WATERS, Plaintiff pulled his vehicle to the side of the road to begin the filter regeneration process. After beginning the process, Plaintiff exited the vehicle to perform an inspection around his truck while the 40-minute-long regeneration process commenced. As expected during the "regeneration" process, black smoke again flowed from the SUBJECT VEHICLE's exhaust as the vehicle's systems burned off excess soot from the EGR system's clogged filters.

22.     However, unknown to Plaintiff, the EGR defect had caused components of the SUBJECT VEHICLE to overheat and began a fire in the engine compartment and passenger compartment of the SUBJECT VEHICLE. The fire was not visible from the outside of the vehicle, and its presence was obscured by the typical black smoke that results from manifestation of the EGR defect. At the time of the incident, Plaintiff was not aware of the danger or possibility of fire as a result of the EGR defect.

23.     Plaintiff approached the passenger door of the SUBJECT VEHICLE to re-enter the vehicle. When Plaintiff opened the vehicle's door, a fireball burst from the cabin, severely burning Plaintiff's head, face, and hands.

7

24. Plaintiff has suffered extensive and permanent physical trauma, mental anguish, and economic damages as a result of the EGR defect in the SUBJECT VEHICLE and the tortious acts of Defendants NAVISTAR and WATERS.

## IV. CAUSES OF ACTION

### COUNT ONE
### MISSISSIPPI PRODUCT LIABILITY ACT
### Miss. Code Ann. § 11-1-63 (2013)
### (DEFENDANT NAVISTAR and FICTITIOUS DEFENDANTS)

25. Plaintiff incorporates as if re-alleged paragraphs 1 through 24 above.

26. This is a product liability, negligence, and breach of implied warranty case brought under the Mississippi Product Liability Act, Miss. Code Ann. § 11-1-63 (2013) ("MPLA").

27. NAVISTAR and the applicable FICTITIOUS DEFENDANTS designed, manufactured, marketed, distributed, and/or sold the defective SUBJECT VEHICLE and are therefore strictly liable to Plaintiff for all injuries and damages proximately caused by Plaintiff's exposure to NAVISTAR'S defect and unsafe product under Mississippi and other applicable law.

A. **Strict Products Liability—Design Defect**

28. NAVISTAR developed and designed the SUBJECT VEHICLE to be used by ordinary consumers, such as Plaintiff.

29. Plaintiff used the SUBJECT VEHICLE in substantially the same condition it was in when it left the control of NAVISTAR. If any modifications were made to the product after it left the custody and control of NAVISTAR, such changes or modifications were foreseeable by NAVISTAR.

30. In designing the SUBJECT VEHICLE, it was both technologically and economically feasible for NAVISTAR to develop an alternative product which was safer in light of its intended or reasonably foreseeable uses.

8

31.     Plaintiff was unaware and through exercise of reasonable diligence could not have discovered the SUBJECT VEHICLE's defective design or perceived its unreasonably dangerous condition.

32.     NAVISTAR knew or should have known that the SUBJECT VEHICLE was defectively designed and that safer alternative designs existed that would have prevented or minimized the injuries sustained by Plaintiff.

33.     As a direct and proximate result of the SUBJECT VEHICLE'S defective design, Plaintiff was caused to suffer injuries and damages as alleged herein.

**B.      Strict Products Liability—Manufacturing Defect**

34.     NAVISTAR manufactured and sold the SUBJECT VEHICLE to be used by ordinary consumers, such as Plaintiff.

35.     At the time the SUBJECT VEHICLE left NAVISTAR'S exclusive control, there existed manufacturing defects with the product.

36.     The SUBJECT VEHICLE was defective and unreasonably dangerous because it failed to perform as safely as an ordinary consumer would expect when the product was used in a reasonably foreseeable manner.

37.     NAVISTAR knew or should have known that the SUBJECT VEHICLE was suffering from manufacturing defects that were likely to cause injuries such as those sustained by Plaintiff.

38.     When the SUBJECT VEHICLE designed, manufactured, marketed, distributed, and/or sold by NAVISTAR left NAVISTAR'S custody and control, the foreseeable risks associated with the use of the product far exceeded the benefits associated with the product's use.

9

39.     As a direct and proximate result of the SUBJECT VEHICLE'S manufacturing defects, Plaintiff was caused to suffer injuries and damages as alleged herein.

**C.     Strict Products Liability—Failure to Warn**

40.     NAVISTAR knew or should have known that the SUBJECT VEHICLE was unreasonably dangerous to users when put to its intended and reasonably anticipated use.

41.     Given its actual or constructive knowledge, NAVISTAR owed Plaintiff a duty to provide adequate warnings, labeling, directions, and instructions for the use of the SUBJECT VEHICLE.

42.     NAVISTAR breached its duty to Plaintiff by failing to provide adequate warnings, directions and instructions for use.

43.     Consequently, the SUBJECT VEHICLE was defective and unreasonably dangerous at the time of its release into the stream of commerce due to inadequate warnings, labeling, directions and instructions for use.

44.     NAVISTAR failed to provide warnings or instructions regarding the safety risks presented by using its product that a manufacturer exercising reasonable care would have provided, considering the likelihood that its product would cause these injuries.

45.     NAVISTAR failed to update warnings based on reported incidents with its SUBJECT VEHICLES.

46.     Had Plaintiff received adequate warnings regarding the safety risks associated with the use of the SUBJECT VEHICLE, Plaintiff would not have used the product.

47.     As a direct and proximate result of the SUBJECT VEHICLE'S inadequate warnings, labeling, directions and instructions for use, Plaintiff was caused to suffer injuries and damages as alleged herein.

10

**D.**    <u>Negligence</u>

48.    NAVISTAR owed Plaintiff and other consumers a duty to exercise reasonable care when designing, manufacturing, distributing, and selling the SUBJECT VEHICLE, including the duty to take all reasonable steps necessary to ensure the produce was not unreasonably dangerous to its consumers and users, and to warn Plaintiff and other consumers of the dangers associated with the SUBJECT VEHICLE.

49.    During the time that NAVISTAR designed, manufactured, distributed, and/or sold the SUBJECT VEHICLE, NAVISTAR knew or should have known that the SUBJECT VEHICLE was defective, dangerous, and otherwise harmful to Plaintiff.

50.    NAVISTAR breached its duty, and thus was negligent, in at least the following ways:

    a.   Tortiously designing, manufacturing, marketing, promoting, advertising, and/or selling the SUBJECT VEHICLE such that a defect existed that allowed the SUBJECT VEHICLE to catch on fire, causing Plaintiff to suffer injury;

    b.   Tortiously designing, manufacturing, marketing, promoting, advertising, and/or selling the SUBJECT VEHICLE such that a defect existed that caused the SUBJECT VEHICLE to catch on fire under normal use, causing Plaintiff to suffer injury;

    c.   Tortiously failing to warn at all, or to adequately warn, end users of the SUBJECT VEHICLE, including Plaintiff, of the unreasonable dangers and risks inherent in its design and manufacture; and

11

.    .

    d.   Tortiously failing to timely and effectively remedy, recall, or otherwise warn post-sale of the defective and dangerous condition known to exist in the SUBJECT VEHICLE so as to avoid suffering and injury, such as occurred here.

51.    As a direct and proximate result of NAVISTAR'S negligence, Plaintiff was caused to suffer injures and damages as alleged herein.

**E.**    **Breach of Express and Implied Warranty**

52.    NAVISTAR knew of the intended and reasonably foreseeable use of the SUBJECT VEHICLE and impliedly warranted the product to be of merchantable quality and safe and fit for its intended and particular use and purpose.

53.    Further, NAVISTAR offered an express warranty on the defective EGR components at issue, but NAVISTAR failed to remedy these defects when Plaintiff presented the SUBJECT VEHICLE to NAVISTAR's certified service technicians within the warranty period with complaints of EGR failure.

54.    NAVISTAR'S warranties were false, misleading and inaccurate.

55.    Plaintiff reasonably relied upon the superior knowledge of NAVISTAR and thus relied upon its warranties as to the merchantability, safety, and fitness of the SUBJECT VEHICLE.

56.    The SUBJECT VEHICLE was neither safe for its intended use nor of merchantable quality, as had been implied and expressly represented by NAVISTAR, in that the SUBJECT VEHICLE has dangerous propensities when used as intended and will cause severe injuries to users.

57.    Despite NAVISTAR'S express and implied warranties to the contrary, the SUBJECT VEHICLE'S dangerous propensities rendered the drug unreasonably dangerous to users, including Plaintiff.

12

58.    As a direct and proximate result of NAVISTAR'S breach of express and implied warranties, Plaintiff was caused to suffer injures and damages as alleged herein.

**COUNT TWO**
**NEGLIGENCE**
**(DEFENDANT SUMMIT/WATERS and FICTITIOUS DEFENDANTS)**

59.    Plaintiff incorporates as if re-alleged paragraphs 1 through 58 above.

60.    Defendant SUMMIT/WATERS and the applicable FICTITIOUS DEFENDANTS are not a "manufacturer, designer, or seller" of the SUBJECT VEHICLE for purposes of the MPLA. Instead, Defendant SUMMIT/WATERS and the applicable FICTITIOUS DEFENDANTS undertook a duty to inspect, service, and certify the SUBJECT VEHICLE for road-worthiness. Defendants breached those duties, and their breaches of the standard of care were a but-for cause of Plaintiff's injuries.

61.    Defendant SUMMIT/WATERS, including its employees, agents, directors, officers, shareholders, partners and associates, had a legal duty to act reasonably to protect owners and drivers of the vehicles it services, which includes adequately and properly managing and operating their business and retail operations; and to use reasonable care in the testing, servicing, repairing, and maintaining of the Defective Vehicles including the SUBJECT VEHICLE; and to adequately and properly train and supervise their employees and agents, including their sales representatives, technicians, and other personnel to act without negligence, conscious disregard, despicable or other wrongful conduct.

62.    Defendant SUMMIT/WATERS breached said duties and is guilty of one or more of the following negligent acts and/or omissions:

a.    Failing to use due care in the servicing, testing, inspection, repair, and maintenance of Defective Vehicles, including the SUBJECT VEHICLE and its

13

components, and/or to utilize reasonably safe warnings regarding the condition of the SUBJECT VEHICLE that required service;

b.     Failing to provide adequate and proper warnings to Plaintiff of the SUBJECT VEHICLE's danger when used in the manner that was known to Defendant SUMMIT/WATERS;

c.     Failing to adequately identify and mitigate the hazards in the SUBJECT VEHICLE and give reasonable warning, including information about the dangerous performance of the SUBJECT VEHICLE; and

d.     Falsely representing to Plaintiff that the SUBJECT VEHICLE was safe to drive prior to Defendant SUMMIT/WATERS's service and maintenance of the SUBJECT VEHICLE pursuant to the recall to remedy the safety hazard known to Defendant SUMMIT/WATERS.

63.     Defendant SUMMIT/WATERS, as a certified NAVISTAR dealership and servicer of Defective Vehicles, knew or should have known from its servicing of other Defective Vehicles that the SUBJECT VEHICLE and its components were defective, dangerous, or likely to become dangerous when used or misused in an intended or reasonably foreseeable manner. Defendant SUMMIT/WATERS had the knowledge, ability, and duty to minimize the substantial risk of serious bodily harm by Defective Vehicles, including the SUBJECT VEHICLE. Defendant SUMMIT/WATERS consciously chose not to take such steps, and instead falsely misrepresented to Plaintiff that the SUBJECT VEHICLE was safe to drive, when in fact, it was not safe to drive— a fact that was known or should have been known to Defendant SUMMIT/WATERS. Plaintiff relied on these misrepresentations when he drove the SUBJECT VEHICLE at the time of the incident. These acts therefore prevented Plaintiff from becoming aware that the SUBJECT

14

VEHICLE was, in reality, unsafe, dangerous and defective, causing the described injuries and damages to Plaintiff.

64. A reasonable dealership under the same or similar circumstances would have discovered and repaired the dangerous condition of the SUBJECT VEHICLE that rendered the unsafe to drive.

65. Further, a reasonable dealership under the same or similar circumstances would have warned of the danger and informed Plaintiff that the SUBJECT VEHICLE was unsafe to drive to his service appointment.

66. The failure of Defendant SUMMIT/WATERS to repair the SUBJECT VEHICLE, identify deadly hazards in the SUBJECT VEHICLE, or provide adequate warnings of the risk of substantial harm associated with the foreseeable use of the SUBJECT VEHICLE was a substantial factor in legally and proximately causing the injuries to Plaintiff.

67. As a result of these acts and omissions, Plaintiff is entitled to compensatory damages, including economic and non-economic damages, punitive damages, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, awarding as follows:

   a. That Defendants Answer this Complaint as provided by law;

   b. That Plaintiff have a trial by struck jury;

   c. That Plaintiff recovers from Defendants all damages, economic and non-economic, tangible and intangible, past and prospective, general and special, as allowed by law and set forth above;

15

d.  Punitive damages for the gross negligence, wanton, willful, fraudulent, and reckless acts of Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct, to the extent allowable by applicable law;

e.  That the Court award Plaintiff all post- and pre-judgment interested as allowed by law;

f.  That all costs be taxed against Defendants; and

g.  That the Court awards such other and further relief as it shall deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by struck jury as to all issues.

Respectfully Submitted,

DATE: March 9th 2022

J. CURT TANNER (MSB# 106015)
ADAM W. PITTMAN (to apply *pro hac vice*)
CORY WATSON, P.C.
2131 Magnolia Avenue South, Ste. 200
Birmingham, Alabama 35205
Phone: (205) 271-7137
Fax: (205) 324-7896
ctanner@corywatson.com
apittman@corywatson.com

16

JUAN T. WILLIAMS (BPR # 102869)
PERRY GRIFFIN, PC
5699 Getwell Road
Building G, Suite 5
Southaven, MS 38672
Phone: (662) 536-6868
Fax: (662) 536-6869
JW@PerryGriffin.com